# Madison County Board of Education v. Skinner et al.

April 17, 1945.

James J. Shannon for appellant.

E. S. Wiggins and O. P. Jackson for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Plaintiffs below, appellees here, are a number of residents of Madison County who have children of school age, and sue for themselves and others similarly situated. Appellants are members of the County Board of Education. Appellees sought to require the Board to furnish the children of elementary grades with transportation to the two schools to which they had been assigned, as is provided by sec. 158.110, KRS.

The pleadings and proof show that prior to 1941 Blue Lick School District, with approximately 40 pupils, then supporting a one-room school, was consolidated partly with Bobtown and Silver Creek School Districts. The question of consolidation is not in issue, but it is alleged that when it was ordered a former Board had agreed to furnish transportation for elementary pupils. It was charged that it "is approximately 2 miles from the old schoolhouse in the Blue Lick school district to

Silver Creek school and about 2¼ miles to the Bobtown school," an unreasonable distance to require the children of the district to walk.

We pause to make the suggestion that under the statute, supra, the distance from the old schoolhouse to the schools "provided for" is not the criterion upon which to base the duty of the Board. The provision is that transportation shall be furnished to pupils of elementary grade "who do not reside within reasonable walking distance of the school provided for them." The petition charges that the Board had been frequently requested, but had refused to furnish transportation. Alleging it to be a mandatory duty, plaintiffs asked for orders requiring the Board to provide "bus transportation" for the children of the district to Bobtown and Silver Creek schools.

In response to the pleading the Board said that it was both financially and physically impossible to furnish transportation; a school bus route passes within reasonable walking distance, and that "said children have been riding and now ride the bus, since 1941", the bus being routed over Highway No. 25. It is said that while the old school is located at the distances named, from the Bobtown and Silver Creek schools "the distance to the bus line is much shorter." The Board contended, and now contends, that it is impossible to operate a bus over the roads leading to the highway, unless it be a very light bus, equipped with chains. No demurrers were interposed to any of the pleadings. Proof was taken, and treated mainly with distances from the several homes to Bobtown and Silver Creek schools and to Highway No. 25, the latter distances being brought in by reason of the plead ruling of the Board of Education. Section 156.160, KRS, authorizes the State Board to adopt and promulgate rules "concerning the transportation of children to and from school." This ruling is to the effect that pupils should not be recognized in the program of transportation, "who reside within one, one and a half or two miles of the school building," and "it is not necessary that Boards of Education provide transportation for children whose homes are within reasonable walking distance to a bus line."

The proof is presented in such a way that it is a difficult matter to tell just how far some of the parents live, either from the Bobtown or Silver Creek schools,

or from Highway No. 25, over which the bus carries pupils to them, and the Kingston schools. This is due to the fact that witnesses referring to the map exhibit merely used such expressions as "from here to there" without designations on the map.

As best we can make of the proof, it appears that Mr. Skinner, who was chief witness, and a few of his neighbors having elementary pupils in their homes, lived more than 2 miles from the Bobtown school, and some, who lived farther south, were about the same distance from Silver Creek school. Many complainants lived less than 2 miles from the highway. However, the difficulty confronting the pupil children in these homes, and perhaps others who live nearer the respective schools, or the bus route, is the condition of the road or roads over which they are compelled to travel to school or bus route. It is clear from the proof that the side roads, ordinary country or dirt roads, with gravel in some places, are not fitted for children to travel, particularly in bad weather. Aside from this it is shown by the map and proof that such pupils as are required to walk either to Bobtown school or to Highway No. 25, over either Blue Lick or Barker roads, must cross a creek which runs on the east side of, near to and parallel with Highway No. 25. The same may be true as to some pupils who are allocated to Silver Creek. It is established that following rains, the children cannot cross this creek, and so have been unable to attend school regularly.

Those testifying for appellees were not sure whether a bus could operate over the several roads or not, certainly not one of the size and capacity, a 48 passenger bus, provided under specifications of the State Department, but were of the opinion that a smaller bus or passenger cars might be used. Some of them doubted that such smaller vehicles could cross the creeks in times of high water. None thought it would be practical or safe for the children to be transported by wagon.

For the Board it was shown in substance that it furnished transportation for the children of the old district by means of a 48 passenger bus, which accommodated all the children who presented themselves along the route. The bus made regularly scheduled trips from Kingston school near the Silver Creek bridge, picking up children going to Bobtown school. It then retraced,

picking up pupils who attended Silver Creek, but depositing them at Silver Creek bridge, from which point they had to walk an appreciable distance to that schoolhouse. The Board showed that it had proposed that if some of the patrons would transport the children to the bus route, the Board would meet the expense; that it would be impossible to use a bus of the type prescribed by the State Department over the various side roads, and that only two types, 48 and 34 passenger busses were available. Also that members of the Board, with patrons, had visited the fiscal court and sought to have the court put the roads in passable condition.

The County Road Engineer testified that the roads were in bad condition, worse during the extreme weather of the winter of 1944 and 1945. He thought these roads were reasonably good for foot travel, but unfit for the use of a ''heavy car or pickup truck.'' He had been unable to have the road worked properly, due to the state of weather. While the patrons appear to be of the impression that they should have a bus, and transportation similar to that afforded other children, they indicated that any sort of transportation affording the regular and safe transportation of their children would be satisfactory.

On this proof the chancellor first entered a temporary injunction; by agreement the cause was finally submitted on the same proof, and the court directed final order, which in substance was the same as the temporary one, directing the Board ''to furnish to the school children of Blue Lick district, * * * such reasonable mode of transportation as the condition of the roads leading to Silver Creek and Bobtown schools permit.'' The injunction was to be in force until the end of the current school term.

The pleadings, proof and the order are such as to make it difficult for us to determine satisfactorily the rights of the complaining parties, or the exact duties of the Board. The order leaves open to the discretion of the Board the determination of what is a reasonable mode of transportation, and as to whether or not the condition of the roads is such as to permit the use of the mode of transportation adopted. It is also to be noted that the order is effective only during the present school term. As we read the proof, there are some children who live within reasonable walking distance, and who do not

have to cross creeks to get either to the schools or the bus line. If such pupils may safely travel the roads in going to schoolhouses or to the bus line, the requirement would be met.

We have held it to be the mandatory duty of the Board to furnish transportation to children who did not live in reasonable walking distance of the school attended. Hines v. Pulaski County Board of Education, 292 Ky. 100, 166 S. W. 2d 37; Ex parte Board of Education of Montgomery County, 260 Ky. 246, 84 S. W. 2d 59; Brown v. Bailey, 238 Ky. 287, 37 S. W. 2d 58; Alford v. B. of E. Campbell County, Ky., 184 S. W. 2d 207. In none of these does it appear that issues were raised as were attempted to be raised here. One thing is certain from a reading of these cases, the statutes on the subject of education, and the promulgations of the State Board, that it was the declared purpose of the Legislature, and the State Board, that every child of school age should be afforded a full opportunity to receive freely the benefit of an education. This is evidenced by the provisions for compulsory attendance, free text books, the furnishing of free transportation under certain circumstances.

The statute also provides for emergency schools where there are less than 50 resident pupils. KRS sec. 160.070; KRS sec. 160.320 gives power to the Board to make provisions for roads or passways to school buildings in order to accommodate pupils who are entitled to attend, and is to have the assistance of the fiscal court in this respect. The County, through its fiscal court, may furnish transportation by supplementing an established bus system for the benefit of elementary pupils, in compliance with the compulsory attendance law, where the pupils do not live in reasonable walking distance of the school "and where there are no sidewalks along the highway they are compelled to travel." KRS sec. 158.115. The State Board, in its effort to see that all children may receive education, has in its "Manual on Transportation" authorized county boards "in unusual cases, involving a small number of children living in sparsely settled areas", to provide transportation by automobile as a means of enabling "one or more" pupils to attend regularly an adequate school. This seems to contemplate an arrangement with patrons for pay in case they afford transportation.

712

In the case presented it appears that a great part of the trouble is due to impassable roads. The conditions of roads for travel is a matter for the fiscal court, and in cases where the education of children is involved the court should cooperate to the fullest extent with the patrons and school boards to furnish adequate roads to schoolhouses. There should be no less cooperation looking to that end between the patrons and the educational board. It is confidently hoped, and may be assumed, that before the beginning of the next school term there may be such cooperation on the part of all parties interested, and those who have duties to perform, as that the situation here will be remedied satisfactorily. As the case is presented, we must follow the ruling of the chancellor, and the judgment is affirmed.