## BOWEN et al. v. MEYER et al.

Court of Appeals of Kentucky.
Jan. 30, 1953.

Rehearing Denied March 20, 1953.

Lucian L. Johnson, Louisville, for appellants.

J. W. Jones, Louisville, for appellees.

CULLEN, Commissioner.

The Jefferson County Board of Education appeals from a judgment which requires the board to furnish transportation, to the Orville J. Stivers elementary school, for pupils who reside in certain neighborhoods at a distance of from one mile to two and one-quarter miles from the school. Involved is the interpretation and application of KRS 158.110, which requires boards of education to furnish transportation to elementary pupils "who do not reside within reasonable walking distance of the school provided for them".

The school is located near the eastern boundary of the city of Louisville, and the territory it serves is a populous suburban area, including several platted subdivisions. However, the school building is situated some distance northeast of the thickly-populated area, and pupils must travel varying distances along open county roads in order to reach the school.

We think it is clear that the distance alone, which at the most is two and one-quarter miles, is not unreasonable. Board of Education of Clay County v. Bowling, 312 Ky. 749, 229 S.W.2d 769. However, our decisions have recognized that hazards and conditions of the roads that must be traveled are factors to be taken into consideration in determining whether a particular distance is a reasonable walking distance. Madison County Bd. of Ed. v. Skinner, 299 Ky. 707, 187 S.W.2d 268; Schmidt v. Payne, 304 Ky. 58, 199 S.W.2d 990; Board of Education of Clay County v. Bowling, 312 Ky. 749, 229 S.W.2d 769.

In the case before us, the school is located on Westport Road, about 1250 feet north of Hubbard Lane, which crosses Westport Road at right angles. Massie Avenue lies some 1250 feet west of, and parallel with, Westport Road, and Massie Avenue has its northern terminus at its intersection with Hubbard Lane. Massie Avenue has a traffic count of one car every minute in the morning, and one car every two minutes in the afternoon. The traffic count on Westport Road is one car every 10 seconds in the morning, and one car every 20 seconds in the afternoon. The morning traffic count on Hubbard Lane is one car every 15 seconds.

One group of school children would travel Massie Avenue on their way to and from school. After reaching the intersection with Hubbard Lane, they would walk 250 feet east on that road; then north 500 feet on Rudy Avenue; then east on Bonner Avenue 1000 feet to Westport Road; then north about 200 feet to a point opposite the school, where a school safety patrol would be available to escort them across the road. It appears that Rudy Avenue and Bonner Avenue do not present any particular hazards, and that the only hazardous part of the route consists of that part of Massie Avenue running south from Hubbard Lane, a distance of 3250 feet. For some 2000 feet of this distance the pavement is from 11½ to 13 feet wide, with two or three-foot shoulders composed of gravel and tar with a somewhat uneven surface. For the remaining 1250 feet, the pavement is from 14 to 16 feet in width, with similar shoulders. On the part where the pavement is narrow, one car must pull off on the shoulder when meeting another car. There is no hazard other than the narrowness of the road.

The second group of children would travel Westport Road. At the southern end of the road they would be required to cross some railroad tracks, on which two trains are scheduled in the morning, and two in the afternoon, at hours when the children might be passing. Westport Road has a pavement 22 feet in width, with three-foot shoulders covered with short grass and weeds. The distance the children would be required to walk along Westport Road is less than half a mile.

It is stipulated that school safety patrol boys are stationed at the intersection of Massie Avenue and Hubbard Lane, and that a county traffic patrolwoman is stationed at the intersection of Westport Road and Hubbard Lane, to assist pupils in crossing.

Another factor which we think may be given some consideration is the availability of common carrier bus transportation for the children, from their home neighborhoods to the intersection of Westport Road and Hubbard Lane, 1000 feet south of the school. The fare is five cents without transfer, and six and one-half cents with transfer. School safety patrol boys ride these buses to assist the younger children.

The board of education necessarily must be allowed some discretion in determining what is a reasonable walking distance in any particular situation, and the courts should not interfere unless the board has acted in an arbitrary and unreasonable manner in refusing to furnish transportation. Board of Education of Clay County v. Bowling, 312 Ky. 749, 229 S.W.2d 769.

We think the circumstances here are similar to those in the Clay County case, supra, and the hazards presented are not of such magnitude as to make it mandatory upon the board to furnish transportation. Westport Road, itself, presents no unusual dangers, and we do not consider the railroad tracks as being sufficient, alone, to require bus transportation to be supplied. Massie Avenue is narrow, it is true, but the traffic upon it is not heavy.

In a suburban area, such as this, children are exposed to the hazards of traffic in any of their outdoor activities. They will be upon the streets in play, in visiting their friends, and in going to the stores. They early in life must be trained to take care of themselves in traffic. Public bus transportation is a common convenience to them.

The situation of the suburban child is much different than that of the country boy, who ordinarily is not upon the highways on foot except in going to and from school; who is not conditioned to the hazards of constant automobile traffic; and who has

492

no means of reaching school other than on foot or by school bus.

In the Shelbyville case, Schmidt v. Payne, 304 Ky. 58, 199 S.W.2d 990, the children would have been compelled to walk along a crooked, winding, heavily traveled country road, crossing a narrow bridge, a railroad, and a main federal highway. The hazards in the case now before us are not comparable to those in the Shelbyville case.

The judgment is reversed, with directions to set it aside and to dismiss the plaintiffs' petition.